CLINTON GRAIN CO. *v.* FRENCH.

1. FRAUDS, STATUTE OF—MUST BE PLEADED TO BE AVAILABLE.
   The defense of the statute of frauds is not available under plea of the general issue unless notice of such defense is given as required by section 2 of Circuit Court Rule No. 23.

2. APPEAL AND ERROR—DIRECTED VERDICT—REVIEW.
   Where the trial court directed a verdict against plaintiff, the Supreme Court, on error, must take the most favorable view of the testimony in support of its claim.

3. CONTRACTS—ORAL CONTRACT—NATURE OF CONTRACT A QUESTION FOR JURY—FRAUDS, STATUTE OF.
   Evidence that defendants entered into an oral contract with plaintiff whereby plaintiff was to purchase for them hay advancing the money to pay for same and also for the baling, hauling, etc., and was to receive for its service $2 a ton in addition to the money advanced, *held,* sufficient to present a question for the jury, under proper instructions, as to whether said contract was one of employment, to which the statute of frauds was not applicable, as claimed by plaintiff, rather than one for the sale of hay, as claimed by defendants, and that the court was in error in directing a verdict for defendants.

4. SAME—MASTER AND SERVANT—RIGHT TO TERMINATE DOES NOT DEFEAT RIGHT TO RECOVER FOR WORK ALREADY DONE.
   The fact that the contract might be terminated at any time is no reason why plaintiff should not be paid for work already done and for expenditures already made under the contract.

Error to Kent; Perkins (Willis B.), J. Submitted April 27, 1921. (Docket No. 31.) Decided June 6, 1921.

Assumpsit by the Clinton Grain Company against Jay F. French and John C. Wallace, copartners as

J. F. French & Company, for a balance due under a contract for the purchase of hay. Judgment for plaintiff on a directed verdict for less than the amount claimed. It brings error. Reversed.

*F. M. Freeman* and *J. N. Sampson,* for appellant.

*Clare J. Hall* (*C. B. Stevens,* of counsel), for appellees.

STONE, J. This case is in this court upon a writ of error sued out by the plaintiff to review a judgment entered upon a directed verdict for the defendants, in the court below. Plaintiff is a domestic corporation domiciled at Clinton, Lenawee county, with Walter P. Cotton as its secretary and treasurer; and he and Jacob Reiser, another stockholder, were at the time this cause arose the active managing officers and stockholders of the company. Defendants are copartners, trading as J. F. French & Company, composed of Jay F. French of Grand Rapids, and John C. Wallace of Hart, Michigan. Both parties were dealers in farm products.

The declaration in substance alleges an engagement between the parties whereby plaintiff was to expend money and render service in behalf of defendants. We quote from the declaration:

"And said defendants became and were desirous about the month of February, 1918, of entering into an arrangement with plaintiff, whereby plaintiff, by its officers, managers and employees, should purchase large quantities of hay for defendants, from farmers and producers in and about the village of Clinton, and whereby an agreement and understanding was reached, by and between plaintiff and defendants and the agents, officers and authorized employees of each, whereby plaintiff, in substance, was to make purchases of clover and timothy hay of and from farmers in and about Clinton aforesaid, and make payment therefor, plaintiff to do, or cause to be done, all work surrounding the purchase of the same, to pay

and discharge the cost and expense of baling, to attend to loading on cars to be shipped to defendants, at such destination, or to such parties as defendants should direct, and for all of which, defendants were to pay, or reimburse plaintiff for the moneys actually paid and expended to the farmers, or producers of such hay, the actual cost of baling the same, and an additional sum or amount of $2 per ton for each and every ton so purchased."

The bill of particulars of plaintiff's demand, furnished upon demand of defendants, stated

"that the following is a bill of particulars or statement of hay purchased by plaintiff for defendants and shipped, as alleged in the declaration filed in said cause, and said action being brought to recover the balance of moneys paid therefor, and a commission of two dollars per ton for making such purchases," etc.

The plea was the general issue, with a notice that the alleged agreement mentioned in the declaration was by its terms not to be performed within one year from the making thereof, and that neither said alleged agreement nor any note or memorandum thereof was in writing.

Michael P. Wallace is a brother of defendant Wallace; Michael resided at Clinton. Michael was called by the plaintiff for cross-examination under the statute at the trial. It appeared in evidence that in February, 1918, Michael entered into an agreement with defendants in relation to buying hay. The plan was that he attend to the buying and shipment of the hay, and he and defendants were "to split the profits and losses." Following out that agreement Michael negotiated orally with plaintiff and made an oral arrangement with plaintiff to buy hay for defendants. There was no question raised as to Michael's authority to act for the defendants. It was agreed that the plaintiff company was to look up and buy the hay of the farmers, attend

214—Mich.—29.

to the baling of it and load it on the cars, and plaintiff was to pay the farmers and balers. The persons from whom the purchases were made were to deliver at the railway station, and plaintiff was to load it on the cars. For performing its part of this contract plaintiff was to be paid by defendants the amount, or sums, that it had paid out, or advanced to the farmers for the hay; also the amount that it had expended in baling the hay; also $2 a ton for the work, and other services of plaintiff in connection with the matter.

Under that arrangement plaintiff began to purchase and secure the hay desired by defendants. Mr. Reiser, of plaintiff company, attended mainly to the buying, and baling and loading of cars. Michael P. Wallace generally went with Mr. Reiser into the country, and saw what hay was bought. When the hay thus purchased of farmers was delivered at the railway station, Michael would bill out the hay, and pay plaintiff the money it had expended in connection with that car load, and also the stipulated $2 per ton for plaintiff's work, or services, in connection with the transaction. Defendants sent the money for this purpose to Michael P. Wallace and he deposited it in a Clinton bank, in his name under an account as "agent," and gave his check upon this account to plaintiff in payment. This continued until about May 25, 1918, and up to that time 26 car loads of hay had been shipped. Defendants had paid plaintiff, or reimbursed it, for all moneys expended in connection with the 26 car loads, and the $2 per ton for plaintiff's services, and labor on these cars, with the exception of a balance of $176.65 in favor of plaintiff; and for that amount the trial court directed a verdict in favor of plaintiff.

At that time there were 22 more car loads of hay that had been purchased of the farmers under this arrangement between plaintiff and defendants. Plaintiff had done the work of looking it up, negotiating for

and buying it; had paid the farmers for it (advancing the money for this purpose) and supervised the baling, and paid for baling it. The defendants refused, or neglected to instruct plaintiff where to bill or ship this hay, and repeated efforts were made by plaintiff to get defendants to act, but nothing resulted from those efforts. Plaintiff could not get shipping directions from either Michael P. Wallace or defendants, and this left plaintiff with 22 car loads of this hay on hand. Plaintiff had to take the hay from the farmers, as it already had been paid for by it, and plaintiff had already paid the balers. It had advanced the funds for these purposes. Plaintiff disposed of the 22 car loads of hay for the best price obtainable, the market had gone down, and they sold for $3,605.09 only. For that hay, including cost of baling, plaintiff had advanced or expended $6,566.19, and in addition was entitled to $557.79, as the $2 per ton compensation for services, or work in relation to the transaction, making $7,123.98, or leaving a balance of $3,518.89 that plaintiff had expended in relation to this transaction. Some of the hay secured under this arrangement was purchased from one William Dewey. It was the plaintiff's claim that before it negotiated with Dewey for this hay Mr. Reiser asked Michael P. Wallace what to do about buying the Dewey hay, and Wallace said buy it, and this after Wallace had inspected the Dewey hay. There were 170 tons of the Dewey hay. Some of it was taken by defendants through Michael P. Wallace, but about 130 tons of it were not shipped. The foregoing is substantially the claim of the plaintiff. There was evidence in support of the claim.

At the close of plaintiff's evidence, the defendants made a motion for a directed verdict in their favor. The court adopted the position of defendants and directed a verdict for plaintiff for $176.65, and a verdict against plaintiff for the balance of its claim.

In its charge to the jury directing the verdict, the court stated that it appeared from the undisputed testimony that these cars of hay were loaded from time to time, and were not to be paid for by defendants until they were inspected, loaded and billed to the destination indicated by the defendants; that inspection was not to take place until after the hay had been baled and delivered to the station; and that the right of rejection after inspection was retained by the defendants. That under these facts the contract became what at law is known as a severable contract; that is, each separate car load of hay was a separate contract between the parties; that there was no delivery until after inspection and loading; that being the rule of law governing the transaction, it followed that all future attempted deliveries pursuant to the terms of this oral contract would come within the provisions of the statute of frauds, which provides that a contract for the sale of goods of more than $100 in value shall be in writing, signed by the parties to be charged. So each subsequent attempted delivery was void under the statute, and it rested with the defendants to accept it, or not accept, as they chose. Treating that contract as one of sale of goods, the court also held it too vague and uncertain to be enforced; that it lacked mutuality and was not binding on the parties. It concluded the charge in these words:

"And therefore, under the most elementary rules of law, the contract was void for want of mutuality, because no contract is valid unless both parties stand on an equal footing, so far as the enforcement of the respective rights and duties of the parties are concerned. If the plaintiff can compel the defendants to accept and pay for these hundreds of tons of hay which it bought, but on the other hand, the defendants, in case the plaintiff had seen fit to breach the contract, would have been remediless to compel the plaintiff to deliver a single ton of hay, then the con-

tract must be void, under the rules of law applicable to such cases. And so we have reached the conclusion that this contract, even though it were proven as alleged, is an unenforceable contract; it is a one-sided contract; only one party could enforce it; the other could not. It is void for lack of mutuality."

There was a motion for a new trial which was denied, but as appellant did not except to the refusal, the matter is unimportant.

The single assignment of error available to appellant is that the court erred in directing a verdict in favor of defendants for all of the claim of plaintiff except the sum of $176.65.

The plaintiff claims, and we think with much force, that this is not a case where any of the rules governing the relation of vendor and vendee apply, but rather one controlled by the rules relating to employer and employee. It was only by treating the case as one of sale that the court was able to invoke the statute of frauds. It should be noted in passing that no notice was given under the general issue of the provision of the statute of frauds referred to by the court, as required by section 2 of Circuit Court Rule No. 23. The notice was that the alleged agreement was not to be performed within one year, and was not in writing. No claim of defense was made under that notice. That such defense would not have been available, see cases cited under section 11981, 3 Comp. Laws 1915.

We have looked in vain for any evidence to warrant the statement of the court in its charge that the right of rejection after inspection was retained by the defendants. There is no evidence that any such right was claimed or exercised. But we do not deem it important. The court having directed a verdict against the plaintiff, we must take the most favorable view of the testimony in support of its claim that this was a case of employment of the plaintiff by the defendants to purchase for them hay, it advancing the money to

pay for the same, and for the baling, hauling, etc., for a given price or sum, to wit, $2 a ton, and that it was not a case involving the sale of hay by the plaintiff to the defendants. This in our opinion (the contract having been oral) presented at least a question of fact for the jury, and the verdict should not have been directed. It should be borne in mind that this is not a case where the plaintiff is suing for profits under the terms of a contract for the sale of goods, but it is a case where the plaintiff is seeking to recover for services rendered and money advanced in the course of the employment. Such, at least, is the claim of the plaintiff supported by the evidence, thus presenting a question for the jury under proper instructions. Even if it can be said that there is some evidence in support of defendants' claim that it was a case of sale, yet the contract resting in parol, with conflicting evidence, it was still a matter for the jury.

The fact that this contract might be terminated at any time, is no reason why plaintiff should not have pay for work already done and expenditures already made, under the contract. In our opinion the trial court erred in directing a verdict, and in not submitting the case to the jury under proper instructions.

The judgment of the circuit court is reversed with costs to appellant, and a new trial granted.

STEERE, C. J., and MOORE, WIEST, FELLOWS, CLARK, and SHARPE, JJ., concurred. BIRD, J., did not sit.